UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DEBORAH WENNING and ANDRES CORREA,

                            Plaintiffs,

                    -v-

ON-SITE MANAGER, INC.,

                            Defendant.

------------------------------------------------------------X

14 Civ. 9693 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

On June 22, 2016, the Court granted summary judgment for defendant On-Site Manager, Inc. ("On-Site") on plaintiffs' Fair Credit Reporting Act ("FCRA") claims. *See* Dkt. 105, *reported at Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693 (PAE), 2016 WL 3538379 (S.D.N.Y. June 22, 2016) ("June 22 Decision"). The Court held that, although plaintiffs had presented sufficient evidence to reach the jury as to On-Site's negligence in using the term "Forcible Entry/Detainer" in its tenant-screening reports,[1] *see id.* at *19, plaintiffs had not presented sufficient evidence of willfulness, *see id.* at *24. Plaintiffs now move for reconsideration as to the latter holding. Dkt. 108 ("Pl. Letter"). For the reasons that follow, that motion is denied.

I.   **Plaintiffs' Argument**

Plaintiffs emphasize that, in discussing the negligence claim, the June 22 Decision, at one point, stated that there was sufficient evidence for a reasonable jury "to conclude that On-Site

---

[1] The Court nevertheless dismissed the negligence claim because there was insufficient evidence of damages and causation. *See* June 22 Decision at *19–23.

*knew or should have known* that the term 'Forcible Entry/Detainer' was inaccurate." *Id.* at *17 (emphasis added). Later in the June 22 Decision, in discussing willfulness, the Court stated its finding with more precision: "Plaintiffs have come forward with evidence on which a negligence claim could rest—to wit, evidence that On-Site *should have known* that it could be inaccurate to use 'Forcible Entry/Detainer' to describe New York City Housing Court records— but they have not identified any evidence that On-Site *actually* knew that such usage was inaccurate or that On-Site *subjectively appreciated* the risk of inaccuracy." *Id.* at *24 (first and third emphases added). Plaintiffs argue that these two statements are inconsistent; that, in the second statement, the Court must have "overlooked" (*i.e.*, contradicted) its own earlier "finding" that there was sufficient evidence that On-Site "knew" of its reports' inaccuracy; and that, in granting summary judgment, the Court therefore must have improperly applied an unduly high standard for willfulness. *See* Pl. Letter 2.

## II.   Legal Standard on Motions for Reconsideration

The standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). Reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

As a formal matter, a motion for reconsideration filed within 28 days of judgment—like plaintiffs'—is considered a motion to "amend or alter" a judgment under Federal Rule of Civil Procedure 59(e). *See Hatfield v. Bd. of Cty. Comm'rs for Converse Cty.*, 52 F.3d 858, 861 (10th

Cir. 1995) ("The Federal Rules of Civil Procedure recognize no 'motion for reconsideration.' Instead . . . [i]f the motion is filed within [28] days of the district court's entry of judgment, the motion is treated as a motion to alter or amend the judgment under Fed. R. Civ. P. 59(e).") (citation omitted); *Lichtenberg v. Besicorp Grp. Inc.*, 204 F.3d 397, 401 (2d Cir. 2000) ("A postjudgment motion requesting alteration or amendment of the judgment but denominated a motion under a Rule other than Civil Rule 59(e) is generally treated as having been made under Rule 59(e)."). Rule 59(e) "was adopted to 'mak[e] clear that the district court possesses the power' to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp't. Sec.*, 455 U.S. 445, 450 (1982) (quoting Notes of Advisory Committee on 1946 Amendment to Rules, 28 U.S.C., at 491).

### III. Analysis

At the outset, the Court appreciates the care with which plaintiffs read its decision, and regrets any confusion it created. The phrasing in the June 22 Decision was indeed sloppy: Where the Court wrote that there was sufficient evidence "to conclude that On-Site knew or should have known that the term 'Forcible Entry/Detainer' was inaccurate," *see* June 22 Decision at *17, it should have struck the words "knew or." That corrected formulation is consistent with the balance of the decision, including the Court's later holding that plaintiffs had produced sufficient evidence "on which a negligence claim could rest—to wit, evidence that On-Site *should have known* that it could be inaccurate to use 'Forcible Entry/Detainer' to describe New York City Housing Court records—but they ha[d] not identified any evidence that On-Site *actually* knew that such usage was inaccurate." *Id.* at *24 (first emphasis added).

However, plaintiffs' supposition that the Court must have incorrectly applied a heightened "actual knowledge" standard in analyzing willfulness is wrong. The Court correctly

3

set forth and applied the standard announced in the Supreme Court's decision in *Safeco*. *See* June 22 Decision at *24 ("Willfulness under the FCRA entails reckless disregard of statutory duty. An erroneous interpretation of the FCRA is not reckless unless it is objectively unreasonable. A reckless action entails an unjustifiably high risk of harm that is either known or so obvious that it should be known.") (citing, *inter alia*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68) (citations and internal quotation marks omitted); Pl. Letter 3 (acknowledging that the Court "initially identified the correct 'reckless or knowing' standard"). Indeed, elsewhere in its decision, the Court correctly synopsized the willfulness standard thusly: "[T]he elements of a willfulness claim [under 15 U.S.C. § 1681e(b)] are (1) inaccuracy and (2) a failure to follow reasonable procedures that is (3) knowing or reckless." June 22 Decision at *8.

Plaintiffs fault the Court for stating that they "[had] not identified any evidence that On-Site *actually* knew that [the term 'Forcible Entry/Detainer'] was inaccurate or that On-Site subjectively appreciated the risk of inaccuracy." June 22 Decision at *24. In plaintiffs' view, this language must bespeak application, *sub silentio*, of an "actual knowledge" standard inconsistent with *Safeco*. That is wrong. The following elaboration may be of assistance.

A willfulness claim under 15 U.S.C. § 1681e(b) requires evidence that the defendant knowingly or recklessly failed to "follow reasonable procedures to assure maximum possible accuracy." 15 U.S.C. § 1681e(b) ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."); *accord Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 265 (4th Cir. 2012). Crucially, the FCRA does not require procedures capable of assuring total and complete accuracy—only "maximum possible accuracy." Thus, even if the Court *had* found evidence that On-Site knew that the term "Forcible

Entry/Detainer" was inaccurate—as the now-corrected passage on page *17 of the June 22 Decision appears to have conveyed to plaintiffs—it would not have been required, as plaintiffs suggest, to find evidence of a willful violation. Plaintiffs would also have needed to come forward with evidence that On-Site had willfully—*i.e.*, knowingly or recklessly—failed to follow reasonable procedures to avoid that inaccuracy. In other words, evidence was needed that either (1) On-Site *knew* that its decision to replicate Lexis's terminology wholesale created "a high risk of harm," or (2) it was "so obvious that it should be known." *Safeco*, 551 U.S. at 68.

In finding that plaintiffs had not produced sufficient evidence that On-Site "subjectively appreciated the risk of inaccuracy," June 22 Decision at *24, the Court explicitly addressed the inadequacy of plaintiffs' showing as to the first alternative—that On-Site knew that it was creating a high risk of harm. The June 22 Decision did not explain as explicitly why plaintiffs' showing as to the latter alternative—that the risk of harm was "so obvious that it should be known"—was also inadequate. *Safeco*, 551 U.S. at 68.

But, in context, the Court's finding to that effect was apparent: As the June 22 Decision at various points reflected, plaintiffs failed to adduce evidence that On-Site's practice of utilizing Lexis's nationwide terminology was an "objectively unreasonable" application of the FCRA. *Id.* at 69. Most notably, the June 22 Decision found persuasive, and applied to the facts at hand, the Fourth Circuit's analysis in *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409 (4th Cir. 2001). There, as the June 22 Decision summarized, the Fourth Circuit "found that the plaintiff had adduced sufficient evidence of negligence, but did not find willfulness, for reasons including [1] the absence of evidence of other consumer complaints similar to plaintiff's, [2] the fact that the [defendant] had found reliable the firm it tasked with doing criminal background investigations, and [3] the fact that the [defendant] corrected its mistake one day after plaintiff

raised it." June 22 Decision at *24 (citing *Dalton*, 257 F.3d at 417–18).[2] As the June 22 Decision recognized, *Dalton* and similar cases illustrate that willfulness requires awareness of facts "from which the inference could be drawn that a substantial risk of serious harm exists," even though, as to FCRA claims, the defendant need not have actually "draw[n] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).[3] In *Dalton*, the Fourth Circuit concluded that the absence of similar complaints, the apparent reliability of the subvendor, and the speedy correction of the mistake all demonstrated that the defendant had not been aware of facts from which it should have drawn the inference that there was a substantial risk of serious harm.

In the June 22 Decision, this Court found the same factors present in this case. And it cited *Dalton* as "illustrative" and "strongly counsel[ing] against a finding of willfulness." June 22 Decision at *24. The Court's analysis thus clearly bespoke its conclusion that plaintiffs had

---

[2] In *Dalton*, the Fourth Circuit also noted that the plaintiff had failed to show that the defendant "was aware that its subvendors relied upon informal legal opinions from court clerks" in compiling criminal records. 257 F.3d at 418. In contrast, here, plaintiffs produced evidence that On-Site was aware or should have been aware that Lexis would use the term "Forcible Entry/Detainer," as opposed to the accurate term "holdover." *See* June 22 Decision at *17. Otherwise, as relevant, *Dalton* is on all fours with this case.

[3] In *Safeco*, the Supreme Court held that "the common law has generally understood [recklessness] in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" 551 U.S. at 68 (quoting *Farmer*, 511 U.S. at 836). In *Farmer*, the Supreme Court rejected this "civil-law recklessness" test in the context of Eighth Amendment conditions-of-confinement claims, holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. To the extent that *Dalton* quoted a pre-*Safeco* appellate decision holding that an FCRA plaintiff must show that the defendant "knowingly and intentionally committed an act in conscious disregard for the [consumer's] rights"—which could be construed as adopting a *Farmer*-like test, *see* 257 F.3d at 418 (quoting *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986))—this Court did not rely on that aspect of *Dalton*.

not adduced sufficient evidence that On-Site recklessly failed to follow reasonable procedures, *i.e.*, that the risk of harm caused by its procedures was "so obvious that it should be known." *Safeco*, 551 U.S. at 68.

Therefore, plaintiffs' surmise is incorrect. In dismissing plaintiffs' claims, the Court did not, *sub silentio*, apply a heightened "actual knowledge" standard to assess willfulness.

## CONCLUSION

For the foregoing reasons, the Court amends its June 22 Decision by striking the words "knew or" from the sentence reading: "In the Court's assessment, although the question is a close one, this evidence, viewed in combination, is sufficient to permit a reasonable jury to conclude that On-Site knew or should have known that the term 'Forcible Entry/Detainer' was inaccurate as applied to New York City holdover proceedings, and that Lexis was nevertheless applying this term to such proceedings." *See* June 22 Decision at *17 (Dkt 105, at 34–35). For the reasons explained, this modest correction is in full accord with the reasoning and holding of the Court's June 22 Decision.

The Clerk of Court is respectfully directed to terminate the motion pending at docket number 108.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 8, 2016
　　　　New York, New York